**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION**

| | |
|---|---|
| DANA NESSEL, Attorney General of the State of Michigan, on behalf of the People of the State of Michigan<br><br>Plaintiffs,<br><br>v.<br><br>ENBRIDGE ENERGY, LIMITED PARTNERSHIP, ENBRIDGE ENERGY COMPANY, INC., and ENBRIDGE ENERGY PARTNERS, L.P,<br><br>Defendants. | Case No. |

**NOTICE OF REMOVAL**

PLEASE TAKE NOTICE THAT Defendants Enbridge Energy, Limited Partnership; Enbridge Energy Company, Inc.; and Enbridge Energy Partners, L.P. (collectively, "Enbridge") hereby remove this action from the Circuit Court for the 30th Judicial Circuit, Ingham County, Case No. 19-474, to the United States District Court for the Western District of Michigan pursuant to 28 U.S.C. §§ 1331, 1441(a), 1442, and 1367.

In this action, the Attorney General of Michigan seeks to permanently enjoin Enbridge from continuing to operate its international Line 5 pipeline in the Straits of Mackinac. In finding that removal of a similar suit against Enbridge was proper, this Court recently held that "this Court is an appropriate forum for deciding these disputed and substantial federal issues." *Michigan v. Enbridge*, No. 1:20-cv-01142, ECF No. 42 at 15, PageID.1035 (W.D. Mich. Nov. 16, 2021). This removal is timely because "the initial pleading lack[ed] solid and unambiguous information that the case [wa]s removable" and this Notice is being filed "within 30 days after receipt" of this Court's order in *Michigan*

1

*v. Enbridge*, which "contains solid and unambiguous information that th[is] case *is* removable." *Berera v. Mesa Medical Group, PLLC*, 779 F.3d 352, 364 (6th Cir. 2015) (emphasis added). Removal ensures that both cases between Enbridge and Michigan officials concerning the officials' attempt to shut down the Straits Pipelines are considered in federal court. Indeed, if the Court grants the summary judgment motion that it has authorized Enbridge to file in January, that ruling will impact resolution of this action as well.

## I. The Attorney General's Complaint

1. In her Complaint, the Attorney General seeks declaratory relief and an injunction requiring Enbridge to cease operation of the Straits Pipelines. A copy of the Attorney General's Complaint is attached hereto as Exhibit A.

2. The Complaint includes a "factual background" section. It explains that Line 5 was built as a means of transporting petroleum and other products to Sarnia, Ontario without interruption. Compl. ¶ 10. In 1953, the State of Michigan granted Enbridge's predecessor an Easement "to construct, lay, maintain, use, and operate" two 20-inch pipelines on the bottomlands of the Straits as part of Line 5. *Id.* at ¶¶ 12-14. Line 5 has operated continuously since construction was completed in 1954. *Id.* at ¶ 15.

3. The Complaint includes three counts. Count I asserts that the Easement violates the public trust and is void. *Id.* at ¶¶ 22-63. Counts II and III assert, respectively, that Line 5 is a public nuisance and that it violates the Michigan Environmental Protection Act. *Id.* at ¶¶ 64-70.

4. Enbridge was served with a copy of the Complaint on or about June 27, 2019. Enbridge has not filed an answer, and no discovery has taken place in the state court

action. Both parties instead moved for summary disposition. Those motions have not yet been decided. In January 2021, both parties and the state court agreed that the Attorney General's action should be held in abeyance pending the outcome of the related proceedings before this Court. The action remains in abeyance. Prior to the filing of this Notice, the next planned action in the case was a status conference requested by the Attorney General and scheduled for January 7, 2022.

## II. Related proceedings before this Court

5. This Court is familiar with the parties' dispute from two related cases: *Enbridge v. Whitmer*, No. 1:20-cv-01141 (which remains pending before the Court), and *Michigan v. Enbridge*, No. 1:20-cv-01142 (which Michigan recently voluntarily dismissed).

6. The related proceedings arose out of a November 13, 2020 notice of revocation and termination issued by Michigan Governor Gretchen Whitmer and the Director of Department of Natural Resources. The Governor and Director notified Enbridge that the 1953 easement was revoked for violation of the public trust doctrine. They also notified Enbridge that the easement was being terminated based on Enbridge's alleged violation of the 1953 easement's terms and conditions. The notice directed Enbridge to cease operating the Straits Pipelines by May 12, 2021. The Attorney General's office represented the State, the Governor, and the Director in the related litigation.

7. Enbridge filed *Enbridge v. Whitmer* in this Court on November 24, 2020. In that action under *Ex parte Young*, Enbridge seeks declaratory and injunctive relief barring the defendants—Michigan's Governor and the Director of its Department of Natural Resources—from violating federal law by seeking to shut down the Straits Pipelines. Count I of Enbridge's Complaint claims that the defendants' attempt to shut down Enbridge's pipeline violates the Supremacy Clause of the U.S. Constitution in light of the

3

express preemption provision of the federal Pipeline Safety Act.  *See* No. 1:20-cv-01141, ECF No. 1 at 10-13, PageID.10-13.  Count III claims that the defendants' attempt to shut down the pipeline violates the Foreign Affairs Doctrine, which is rooted in the Constitution's assignment of authority over foreign affairs to the Federal Government.  *See id.* at 16-18, PageID.16-18.  Enbridge seeks declaratory relief and "[a]n injunction prohibiting Defendants from taking any steps to impede or prevent the interstate and international operation of Line 5."  *Id.* at 18-19, PageID.18-19.  *Enbridge v. Whitmer* remains pending before this Court, which has authorized Enbridge's filing of a motion for summary judgment, due on January 18, 2022.  *See* No. 1:20-cv-1141, ECF No. 42 (briefing order).

8.    Also on November 24, 2020, Enbridge removed *Michigan v. Enbridge* to this Court.  In that lawsuit, the State of Michigan sought an injunction forcing Enbridge to "cease operation of" and "permanently decommission the Straits Pipelines"—the very outcome that Enbridge sued to prevent in *Enbridge v. Whitmer*.  No. 1:20-cv-01142, ECF No. 1-1 at 23, PageID.37.  Enbridge's grounds for removal included the *Grable* doctrine (because the lawsuit "necessarily raised" federal issues of Pipeline Safety Act preemption and the Foreign Affairs Doctrine), federal common law (because of the suit's implications for international relations), and the federal officer removal statute (because Enbridge acts under federal officers in operating its pipeline).  *See* No. 1:20-cv-01142, ECF Nos. 1, 12.

9.    Represented by the Attorney General's office, the State moved to remand *Michigan v. Enbridge* to state court.  *See* No. 1:20-cv-01142, ECF No. 42.  The State argued that rejection of removal under *Grable* was "straightforward, as none of the State's causes of action rely on federal law in any way."  *Id.* at 7, PageID.486.  Rather, the State asserted,

the claims were "all matters of pure state law that fall squarely within the jurisdiction of Michigan courts," and "[t]he issues raised by Enbridge as grounds for federal jurisdiction—alleged statutory preemption, interstate and foreign commerce, and foreign affairs and treaties—are simply its defenses, not elements of the State's claims." *Id.* Indeed, the State vigorously disputed three of the four factors required for removal under *Grable*, contending that the federal issues Enbridge had identified were not "necessarily raised," that those issues were not even "substantial," and that allowing this suit to proceed in federal court would upset the balance between federal and state courts. *See id.* at 7-16, PageID.486-495. The State also urged that there was no legal basis for removal under federal common law or the federal officer removal statute. *See id.* at 16-27, PageID.495-506.

10. This Court rejected the State's arguments and held that *Michigan v. Enbridge* was "properly in federal court" under *Grable*. No. 1:20-cv-1142, ECF No. 80 at 1, PageID.1021. This Court held that "[t]he State Parties' claims 'arise under' federal law because the scope of the property rights the State Parties assert necessarily turns on the interpretation of federal law that burdens those rights, and this Court is an appropriate forum for deciding these disputed and substantial federal issues." *Id.* at 15, PageID.1035.

11. The Governor, however, has made clear that she "disagree[s]" with this Court's ruling that it had jurisdiction. No. 1:20-cv-1141, ECF No. 39-1 at 1, PageID.254. Two weeks after issuance of the Court's November 16 order, the Governor admittedly directed the State to "shift[] its legal strategy" to "give Michigan courts the final say … by voluntarily dismissing" its complaint. *Id.* The Governor believed that this maneuver, which deprived this Court of jurisdiction, would "clear[] the way for the lawsuit filed by Attorney General Dana Nessel to go forward in Michigan state court," giving "state courts, … the

5

final say" on the federal issues implicated by the parties' dispute. *Id.* She further noted that "[o]ur goal here remains the same." *Id.* Attorney General Nessel announced on the same day that she "fully support[s] the Governor in her decision to dismiss the federal court case and instead focus on our ongoing litigation in state court," which she declared the "most viable path to permanently decommission Line 5." Department of Attorney General, "AG Nessel Provides Statement on Voluntary Dismissal of Enbridge Lawsuit in Federal Court" (Nov. 30, 2021), https://www.michigan.gov/ag/0,4534,7-359-92297_99936-573159--,00.html.

12. Consistent with this Court's ruling in *Michigan v. Enbridge* that "this Court is an appropriate forum for deciding these disputed and substantial federal issues," Enbridge hereby removes *Nessel v. Enbridge* to this Court so that it can be resolved along with the still-pending *Enbridge v. Whitmer* lawsuit.

### III. Removal is timely under the third paragraph of 28 U.S.C. § 1446(b)

13. Generally, a defendant must remove within 30 days of receiving the state-court complaint. 28 U.S.C. § 1446(b)(1). The Sixth Circuit has held, however, that "[t]he 30-day period in § 1446(b)(1) starts to run only if the initial pleading contains 'solid and unambiguous information that the case is removable.'" *Berera v. Mesa Medical Group, PLLC*, 779 F.3d 352, 364 (6th Cir. 2015) (citation omitted). If the case is not unambiguously removable when it is filed, then "the defendant must file the notice of removal 'within 30 days after receipt … of a copy of an amended pleading, motion, *order* or other paper' that contains solid and unambiguous information that the case is removable." *Id.* (quoting 28 U.S.C. § 1446(b)(3)) (emphasis added).

14. *Nessel v. Enbridge* was not unambiguously removable when it was filed. The Complaint purports to assert claims under state law only, and the parties are not diverse.

6

Like the parallel complaint in *Michigan v. Enbridge*, the Complaint here arises under federal law under the *Grable* doctrine because substantial federal issues are necessarily raised by the purportedly state-law claims. When the case was filed, however, its removability under *Grable* was far from unambiguous. Indeed, as set forth above, the State (represented by the Attorney General) vigorously argued that the broadly similar complaint in *Michigan v. Enbridge* was not removable and that it satisfied just one of the *Grable* doctrine's four requirements.

15. But in its recent order denying the State's motion to remand in *Michigan v. Enbridge*, this Court made it unambiguously clear that *Nessel v. Enbridge* is likewise removable under *Grable* and is "properly in federal court." No. 1:20-cv-1142, ECF No. 80 at 1, PageID.1021.

16. Appellate case law confirms that this Court's order in *Michigan v. Enbridge* constitutes an "order" within the meaning of 28 U.S.C. § 1446(b)(3). An order in a separate federal proceeding is an "order" under § 1446(b)(3) "where the same party was a defendant in both cases, involving similar factual situations, and the order expressly authorized removal." *Green v. R.J. Reynolds*, 274 F.3d 263, 267-68 (5th Cir. 2001); *see also Doe v. American Red Cross*, 14 F.3d 196, 201-02 (3d Cir. 1993). This case falls squarely within this rule: This Court's removal order in *Michigan v. Enbridge* involved the same Enbridge defendants, the facts and legal theories are similar, and the order expressly authorized removal.

17. Under § 1446(b)(3) and the Sixth Circuit's *Berera* decision, therefore, Enbridge has the right to remove *Nessel v. Enbridge* within 30 days of receipt of the Court's

order in *Michigan v. Enbridge*. This Court issued that order on November 16, 2021. This Notice of Removal is being filed within 30 days of that order and is therefore timely.

### IV. Grounds for removal in this action

18. Following this Court's order in *Michigan v. Enbridge*, this Court plainly has jurisdiction over this case under 28 U.S.C. § 1331. Enbridge submits that removal is proper on three independent and alternative grounds: the *Grable* doctrine, federal common law, and the federal officer removal statute. Each ground is briefly explained below.

19. **The *Grable* doctrine.** This Court held that the similar complaint in *Michigan v. Enbridge* was properly removed under *Grable & Sons Metal Products, Inc. v. Darue Engineering & Manufacturing*, 545 U.S. 308 (2005). *See* 1:20-cv-01142, ECF No. 80. That ruling establishes that this case is likewise removable under *Grable*.

20. As this Court explained, *Grable* holds that "federal-question jurisdiction over state-law claims will lie where the 'state law claim necessarily raise[s] a stated federal issue, actually disputed and substantial, which a federal forum may entertain without disturbing any congressionally approved balance of federal and state judicial responsibilities.'" *Id.* at 6, PageID.1026 (quoting *Grable*, 545 U.S. at 314). Applying the *Grable* framework, this Court held that it had jurisdiction.

21. *First*, the State's suit necessarily raised federal issues because "the Federal Submerged Lands Act necessarily governs the scope of the State's property interest" by reserving to the Federal Government "paramount" authority over the bottomlands, which the Federal Government has exercised by burdening the State's property rights through the Pipeline Safety Act and the Transit Pipelines Treaty with Canada. *See id.* at 10, PageID.1030.

8

22. *Second*, these federal issues are plainly disputed and "raise vitally important questions that implicate the federal regulatory scheme for pipeline safety and international affairs." *Id.* at 12, PageID.1032.

23. *Third*, "exercising jurisdiction over the state law claims" would not "open the federal courthouse doors too wide" because so few state-law claims necessarily raise issues under the Act or the Treaty. *Id.* at 14, PageID.1034. The Court concluded: "The State Parties' claims 'arise under' federal law because the scope of the property rights the State Parties assert necessarily turns on the interpretation of federal law that burdens those rights, and this Court is an appropriate forum for deciding these disputed and substantial federal issues." *Id.* at 15, PageID.1035.

24. The Court's application of *Grable* to *Michigan v. Enbridge*—which the State voluntarily dismissed in an admitted effort to avoid this Court's jurisdiction (*see* ECF No. 39 at 2, PageID.248; ECF No. 39-1 at 2-3, PageID.254-55)—makes clear that *Nessel v. Enbridge* likewise "arises under" federal law and belongs in federal court.

25. **Federal common law.** This Court also has jurisdiction under 28 U.S.C. § 1331 because the claims here implicate uniquely federal interests and thus must be brought, if at all, under federal common law. *See, e.g.*, *National Farmers Union Insurance Cos. v. Crow Tribe of Indians*, 471 U.S. 845, 850 (1985); *Illinois v. City of Milwaukee*, 406 U.S. 91, 100 (1972); *Sam L. Majors Jewelers v. ABX, Inc.*, 117 F.3d 922, 926 (5th Cir. 1997); *Wayne v. DHL Worldwide Express*, 294 F.3d 1179, 1184 (9th Cir. 2002). While the Complaint purports to state claims under Michigan law, courts have long recognized that claims may arise under federal law regardless of whether the plaintiff purports to plead federal claims. *See United States v. Standard Oil Co.*, 332 U.S. 301, 307 (1947) (holding

9

that certain claims asserted under state law must be governed by federal common law because they involved "matters essentially of federal character"). "[I]f federal common law exists, it is because state law cannot be used." *City of Milwaukee v. Illinois*, 451 U.S. 304, 313 n.7 (1981); *see also* Brief for the United States as Amicus Curiae at 26-28, in *BP P.L.C. v. Mayor & City of Baltimore*, No. 19-1189 (U.S. Nov. 23, 2020) (explaining that removal was proper under federal common law in climate change lawsuit that was nominally couched in terms of state-law claims).

26. Enbridge invokes "federal common law based on foreign relations" as an independent basis for removal to federal court. The Fifth, Eleventh, and Second Circuits have recognized that removal is proper when the plaintiff's claims "directly and significantly affect American foreign relations." *Torres v. Southern Peru Copper Corp.*, 113 F.3d 540, 542-53 & n.8 (5th Cir. 1997); *see also Pacheco de Perez v. AT&T Co.*, 139 F.3d 1368, 1377 (11th Cir. 1998); *Republic of Philippines v. Marcos*, 806 F.2d 344, 352 (2d Cir. 1986). That describes this case perfectly. As the Court observed in holding that *Michigan v. Enbridge* was properly removed to federal court, Canada has "formally invoked the international dispute resolution provision of Article IX of the 1977 [Transit] Treaty to determine whether the implementation of the Governor of Michigan's shutdown order would violate the binding commitments the United States made to Canada under international law in the 1977 Treaty." 1:20-cv-01142, ECF No. 80 at 4, PageID.1024 (quotation marks omitted). This Court explained that, "with Canada's invocation of the dispute resolution provision in the 1977 Treaty, the federal issues in this case are under consideration at the highest levels of this county's government," such that the dispute over the Straits Pipelines "raise[s] vitally important questions that implicate … international

10

affairs." *Id.* at 12, PageID.1032. *Nessel v. Enbridge* likewise raises issues pertaining to the continued operation of Line 5 that lay at the heart of the Treaty dispute resolution proceeding now underway. This case belongs in federal court no less than did *Michigan v. Enbridge*.

27. Federal common law supplies the rule of decision for the State's claims, even if the complaint on its face only invokes state law. "[O]ur federal system does not permit the controversy to be resolved under state law, either because the authority and duties of the United States as sovereign are intimately involved or because the interstate or international nature of the controversy makes it inappropriate for state law to control." *Texas Indus., Inc. v. Radcliff Materials, Inc.*, 451 U.S. 630, 641 (1981); *see also City of New York v. Chevron Corp.*, 993 F.3d 81, 89-91 (2d Cir. 2021); *Ungaro-Benages v. Dresdner Bank AG*, 376 F.3d 1227, 1232-33 (11th Cir. 2004). Thus, federal courts have relied on U.S. foreign policy implications to find removal is proper, even though the underlying facts and implications were not alleged in the complaint. *See, e.g., Torres*, 113 F.3d at 542-43 ((relying on foreign government's protests, not alleged in the complaint, to find removal was proper); *Marcos*, 806 F.2d at 353-54 (relying upon an executive order issued by the Philippine government after the filing of the complaint); *Pacheco*, 139 F.3d at 1378.

28. Federal common law also governs for an independent reason: The Complaint is premised on concerns about environmental harm to the Great Lakes from international and interstate commerce. It therefore necessarily implicates uniquely federal

interests and must be governed by federal common law.[1] The Supreme Court has long recognized that "[e]nvironmental protection is undoubtedly an area within national legislative power" for which "federal courts may ... fashion federal common law." *American Electric Power Co. v. Connecticut*, 564 U.S. 410, 419, 421 (2011) (cleaned up); *see also, e.g.*, *Illinois v. City of Milwaukee*, 406 U.S. 91, 99 (1972). For this reason, too, this case belongs in federal court.

29. **The federal officer removal statute.** Federal law expressly authorizes the removal of any state-court action against "any officer (or any person acting under that officer) of the United States or of any agency thereof … relating to any act under color of such office." 28 U.S.C. § 1442(a)(1). "The federal officer removal statute allows a defendant to remove a case from state to federal court if the defendant establishes (1) it is a federal officer or a 'person acting under that officer'; (2) a 'colorable federal defense'; and (3) that the suit is 'for a[n] act under color of office,' which requires a causal nexus 'between the charged conduct and asserted official authority.'" *Ripley v. Foster Wheeler LLC*, 841 F.3d 207, 209-10 (4th Cir. 2016) (citations omitted); *see also, e.g.*, *Bennett v. MIS Corp.*, 607 F.3d 1076, 1085 (6th Cir. 2010). All three elements are satisfied here.

30. *First*, Enbridge "acted under" a federal officer because "the government [PHMSA] exert[ed] some 'subjection, guidance, or control'" over Enbridge's operation

---

[1] In fact, the United States and Canada have long dealt with environmental issues in the Great Lakes through international agreements. The agreements include the 1972 Agreement on Great Lakes Water Quality, Apr. 15, 1972, U.S.-Can., 23 U.S.T. 301, CTS 1972/12. Canada and the United States have also entered into the Agreement Concerning the Transboundary Movement of Hazardous Waste, Oct. 28, 1986, Can.-U.S., T.I.A.S. No. 11,099, CTS 1986/39, and the Canada-United States Joint Inland Pollution Contingency Plan, July 25, 1994, U.S.-Can., to address releases and other environmental emergencies along the Canada-United States border.

and safety management of the Straits Pipelines through its extensive regulation and because Enbridge thereby "engage[d] in an effort 'to assist, or to help carry out, the duties or tasks of the federal superior.'" *Sawyer v. Foster Wheeler LLC*, 860 F.3d 249, 255 (4th Cir. 2017) (quoting *Watson v. Philip Morris Cos.*, 551 U.S. 142, 151-52 (2007)); *see also Watson*, 551 U.S. at 150 (the words "acting under" are "broad" and must be "liberally construed" to effectuate § 1442(a)'s policy objectives—principally, "to protect the Federal Government from [state] interference with its 'operations'"); *Caver v. Central Alabama Electric Cooperative*, 845 F.3d 1135, 1143-44 (11th Cir. 2017); *California v. H&H Ship Service Co.*, 68 F.3d 481, 1995 WL 619293, at *1-2 (9th Cir. 1995) (unpublished); *City of St. Louis v. Velsicol Chemical Corp.*, 708 F. Supp. 2d 632, 660 (E.D. Mich. 2010). Indeed, the federal government recognizes that Enbridge's pipelines constitute critical infrastructure whose operation is vital to the energy supply. *See Wazelle v. Tyson Foods, Inc.*, 2021 WL 2637335, at *3-5 (N.D. Tex. 2021) (holding that Tyson Foods properly removed under the federal officer removal statute "because Tyson Foods was designated as 'critical infrastructure' by the federal government").

31. *Second*, there is a causal nexus between Enbridge's management of the Straits Pipelines pursuant to PHMSA's directives and Plaintiffs' claims concerning the safety of the Pipelines. Historically, the hurdle set by the causal nexus requirement was "quite low." *Goncalves ex rel. Goncalves v. Rady Children's Hospital*, 865 F.3d 1237, 1344-45 (9th Cir. 2017). In 2011, Congress lowered the bar even further. *See Caver*, 845 F.3d at 1144; *Latiolas v. Huntington Ingalls, Inc.*, 951 F.3d 286, 291-92 (11th Cir. 2020). The current version of the statute merely requires that the conduct at issue "relate to" acts under color of federal office. 28 U.S.C. § 1442(a)(1). This test simply requires a

"connection or association" between the acts in the lawsuit and the federal office; the defendant is *not* "required to allege that the complained-of conduct *itself* was at the behest of a federal agency." *In re Commonwealth's Motion to Appoint Counsel Against or Directed to Defender Association of Philadelphia*, 790 F.3d 457, 470-71 (3d Cir. 2015). This suit readily clears that low hurdle, because the allegations here depend on the activities of Enbridge over the past decades in its management of the Straits Pipelines—many of which activities were undertaken in furtherance of PHMSA requirements and, as warranted, direct oversight. Similarly, in *Sawyer*, the Fourth Circuit held that removal was proper where a military contractor, sued for failing to warn of asbestos in military equipment, showed extensive federal control over its activities. This included "highly detailed ship specifications and military specifications provided by the Navy," whereby the Navy exercised "intense direction and control … over all written documentation to be delivered with" the equipment, deviations from which "were not acceptable." 860 F.3d at 253.

32. *Third*, Enbridge intends to raise numerous meritorious federal defenses, including preemption, interstate and foreign commerce, and the foreign affairs doctrine. These and other federal defenses are more than colorable. *See Willingham v. Morgan*, 395 U.S. 402, 407 (1969) (a defendant invoking § 1442(a)(1) "need not win his case before he can have it removed").

33. Removal is thus proper under the federal officer removal statute.

**V. This Court has jurisdiction and removal is proper**

34. Enbridge is required to show that this Court has 28 U.S.C. §1331 jurisdiction over at least one claim in the Complaint. *See Exxon Mobil Corp. v. Allapattah*

14

*Servs., Inc.*, 545 U.S. 546, 563 (2005). It has met this burden here. This Court has supplemental jurisdiction under 28 U.S.C. § 1367(a) over any claims for which it does not have original federal question jurisdiction because those claims form part of the same case or controversy as the claims over which the Court has original jurisdiction. Removal of this action is accordingly proper under 28 U.S.C. §§ 1441(a), 1442, and 1367.

35. All Defendants in this action are Enbridge entities. All consent to removal.

36. The Eleventh Amendment does not bar removal to federal court. *See Oklahoma ex rel. Edmondson v. Magnolia Marine Transp. Co.,* 359 F.3d 1237, 1239 (10th Cir. 2004) ("[T]he Eleventh Amendment's abrogation of federal judicial power 'over any suit ... commenced or prosecuted against one of the United States' does not apply to suits commenced or prosecuted by a State."); *California ex rel. Lockyer v. Dynegy*, 375 F.3d 831, 847-48 (9th Cir. 2004) (same); *In re Katrina Canal Litigation Breaches,* 524 F.3d 700, 710-11 (5th Cir. 2008).

37. Upon filing this Notice of Removal, Defendants will furnish written notice to Plaintiffs' counsel, and will file and serve a copy of this Notice with the Clerk of the Circuit Court for 30th Judicial Circuit, Ingham County pursuant to 28 U.S.C. § 1446(d).

Accordingly, Defendants hereby remove to this Court the above action pending against them in the Circuit Court for 30th Judicial Circuit, Ingham County.

Dated: December 15, 2021

Respectfully submitted,

/s/ *Peter H. Ellsworth*

Peter H. Ellsworth (P23657)
Jeffery V. Stuckey (P34648)
DICKINSON WRIGHT PLLC
123 W. Allegan Street, Suite 900

Lansing, MI 48933
(517) 371-1730
pellsworth@dickinsonwright.com
jstuckey@dickinsonwright.com

Phillip J. DeRosier
DICKINSON WRIGHT PLLC
500 Woodward Avenue, Suite 4000
Detroit, MI 48226
(313) 223-3866
PDeRosier@dickinson-wright.com

John Bursch
BURSCH LAW PLLC
9339 Cherry Valley Avenue SE, #78
Caledonia, MI 49316
(616) 450-4235
jbursch@burschlaw.com

David H. Coburn
William T. Hassler
Alice Loughran
Joshua H. Runyan
Mark C. Savignac
STEPTOE & JOHNSON LLP
1330 Connecticut Avenue, NW
Washington, DC 20036
(202) 429-3000
dcoburn@steptoe.com
whassler@steptoe.com
aloughran@steptoe.com
jrunyan@steptoe.com

## CERTIFICATE OF SERVICE

I hereby certify that on December 15, 2021, the foregoing was served on all parties of record via the ECF filing system.

s/ Peter H. Ellsworth
Peter H. Ellsworth (P23657)
