# UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

|  | 100 EAST FIFTH STREET, ROOM 540 |  |
|---|---|---|
| Kelly L. Stephens | POTTER STEWART U.S. COURTHOUSE | Tel. (513) 564-7000 |
| Clerk | CINCINNATI, OHIO 45202-3988 | www.ca6.uscourts.gov |

Filed: June 17, 2024

Mr. Daniel Paul Bock
Office of the Attorney General
of Michigan
P.O. Box 30755
Lansing, MI 48909

Mr. Andrew Buchsbaum
Buchsbaum & Associates
1715 David Court
Ann Arbor, MI 48105

Mr. John J. Bursch
Bursch Law
9339 Cherry Valley, S.E.
Suite 78
Caledonia, MI 49316

Mr. Christopher Robert Clark
Lambda Legal
65 E. Wacker Place
Suite 1400
Chicago, IL 60601

Mr. David Hyler Coburn
Steptoe
1330 Connecticut Avenue, N.W.
Washington, DC 20036

Mr. Phillip J. DeRosier
Dickinson Wright
500 Woodward Avenue
Suite 4000
Detroit, MI 48226-3425

Mr. Joseph T. Heegaard
Office of the Attorney General of Minnesota
Environmental and Natural Resources
445 Minnesota Street
Suite 1400
St. Paul, MN 55101

Mr. Elbert Lin
Hunton Andrews Kurth
951 E. Byrd Street
Riverfront Plaza, East Tower
Richmond, VA 23219

Ms. Alice Elizabeth Loughran
Steptoe
1330 Connecticut Avenue, N.W.
Washington, DC 20036

Mr. Jonathan D. Newman
Sherman Dunn
900 Seventh Street, N.W.
Suite 1000
Washington, DC 20001

Mr. James Mark Olson
Olson, Bzdok & Howard
420 E. Front Street
Traverse City, MI 49686

Mr. Mark Christopher Savignac
Steptoe
1330 Connecticut Avenue, N.W.
Washington, DC 20036

Mr. Jeffery V. Stuckey
Dickinson Wright
123 W. Allegan Street
Suite 900
Lansing, MI 48933-1816

Mr. Keith David Underkoffler
Office of the Attorney General
of Michigan
P.O. Box 30755
Lansing, MI 48909

Re:  Case No. 23-1671*, Dana Nessel v. Enbridge Energy, LP, et al*
Originating Case No. : 1:21-cv-01057

Dear Counsel,

The court today announced its decision in the above-styled case.

Enclosed is a copy of the court's published opinion together with the judgment which has been entered in conformity with Rule 36, Federal Rules of Appellate Procedure.

Yours very truly,

Kelly L. Stephens, Clerk

Cathryn Lovely
Deputy Clerk

cc:  Ms. Ann E. Filkins

Enclosures

Mandate to issue.

RECOMMENDED FOR PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)

File Name: 24a0134p.06

# UNITED STATES COURT OF APPEALS

### FOR THE SIXTH CIRCUIT

———————————

DANA NESSEL, Attorney General of the State of
Michigan, on behalf of the people of the State of
Michigan,

         *Plaintiff-Appellant,*

      *v.*

ENBRIDGE ENERGY, LP; ENBRIDGE ENERGY COMPANY,
INC.; ENBRIDGE ENERGY PARTNERS, L.P.,

         *Defendants-Appellees.*

No. 23-1671

———————————

Appeal from the United States District Court
for the Western District of Michigan at Grand Rapids.
No. 1:21-cv-01057—Janet T. Neff, District Judge.

Argued:  March 21, 2024

Decided and Filed:  June 17, 2024

Before:  GRIFFIN, THAPAR, and NALBANDIAN, Circuit Judges.

———————————

#### COUNSEL

**ARGUED:**  Daniel P. Bock, OFFICE OF THE ATTORNEY MICHIGAN GENERAL, Lansing, Michigan, for Appellant.  Alice Loughran, STEPTOE & JOHNSON LLP, Washington, D.C., for Appellees.  **ON BRIEF:**  Daniel P. Bock, Keith D. Underkoffler, OFFICE OF THE ATTORNEY MICHIGAN GENERAL, Lansing, Michigan, for Appellant.  Alice Loughran, David H. Coburn, Mark C. Savignac, STEPTOE & JOHNSON LLP, Washington, D.C., John J. Bursch, BURSCH LAW PLLC, Caledonia, Michigan, Phillip J. DeRosier, DICKINSON WRIGHT PLLC, Detroit, Michigan, Jeffery V. Stuckey, DICKINSON WRIGHT PLLC, Lansing, Michigan, for Appellees.  Andy Buchsbaum, BUCHSBAUM & ASSOCIATES LLC, Ann Arbor, Michigan, Joseph T. Heegaard, OFFICE OF THE MINNESOTA ATTORNEY GENERAL, St. Paul, Minnesota, James M. Olson, OLSON, BZDOK & HOWARD, PC, Traverse City, Michigan, Christopher R. Clark, EARTHJUSTICE, Chicago, Illinois, Jonathan D. Newman, SHERMAN DUNN, P.C., Washington, D.C., Elbert Lin, HUNTON ANDREWS KURTH LLP, Richmond, Virginia, for Amici Curiae.

---

## OPINION

---

GRIFFIN, Circuit Judge.

Michigan Attorney General Dana Nessel seeks to shut down Enbridge's Line 5 Pipeline, which runs underwater across the Straits of Mackinac between Michigan's Lower and Upper Peninsulas.  The merits of this litigation are not before us.  Instead, we consider only which court should decide this case:  does it belong in Michigan state court (where the Attorney General filed it in 2019) or in federal court (to where Enbridge removed it over two years later)?  We hold that Enbridge failed to timely remove this case to federal court under 28 U.S.C. § 1446(b), and there are no equitable exceptions to the statute's deadlines for removal.  Thus, under these circumstances, this case belongs in Michigan state court.  Because the district court held to the contrary, we reverse the district court and direct it to remand this case to Michigan's 30th Circuit Court for the County of Ingham.

### I.

Defendant Enbridge[1] owns and operates the Line 5 Pipeline, which is part of a pipeline network that transports petroleum products to refineries in the Midwest, Ontario, and Quebec.  Line 5 runs from northwestern Wisconsin through Michigan's Upper and Lower Peninsulas and then into Canada—terminating in Sarnia, Ontario, just across the border from Port Huron, Michigan.  Between Michigan's peninsulas, it traverses the Straits of Mackinac pursuant to a 1953 easement issued by the State of Michigan, which owns the Straits' bottomlands.  In recent years, that easement has been the subject of litigation in several cases, two of which are relevant here.

---

[1]The defendants here are Enbridge Energy, LP; Enbridge Energy Company, Inc.; and Enbridge Energy Partners, L.P. (collectively, "Enbridge").

### A.

*The Attorney General's case.*  On June 27, 2019, Michigan Attorney General Dana Nessel filed this case in Michigan state court, the 30th Circuit Court for the County of Ingham. The summons and complaint were served on Enbridge on July 12, 2019.  The complaint seeks to enjoin Enbridge's continued operation of Line 5 based on alleged violations of three state laws: the public-trust doctrine, common-law public nuisance, and the Michigan Environmental Protection Act.

On September 16, 2019, Enbridge responded to the complaint by moving for summary disposition, arguing that the complaint failed to state a claim on which relief could be granted. Enbridge argued, among other things, that the Attorney General's claims under the public-trust doctrine were preempted by the federal Pipeline Safety Act, which it claimed occupies the field of pipeline-safety regulation.  The Attorney General then filed her own dispositive motion.

In May 2020, the state court held oral argument on those dispositive motions.  Before the argument, the state court asked the parties to be prepared to answer questions about federal preemption.  Much of the argument indeed focused on preemption issues, including whether the Attorney General's claims were preempted by either the Pipeline Safety Act or the federal Submerged Lands Act.  The court requested post-argument briefing on these preemption issues. In Enbridge's supplemental brief, Enbridge reiterated its preemption defenses, arguing that the Pipeline Safety Act and the Submerged Lands Act preempted Michigan's public-trust authority applied to an oil pipeline on submerged bottomlands.

While those dispositive motions were pending, the Attorney General filed a separate motion for a temporary restraining order and preliminary injunction on June 25, 2020.  That motion stemmed from a recently disclosed report about issues with Line 5's infrastructure at the Straits.  Enbridge actively participated in the briefing and argument that followed.  The motion resulted in a temporary restraining order that briefly enjoined the operation of the pipeline on the Straits' bottomlands.  The court later authorized Enbridge to restart the pipeline's operations after complying with its federal safety regulator's requirements.

B.

*The Governor's case.*   On November 13, 2020, before a ruling by the Ingham County Circuit Court on the competing motions in the Attorney General's case, Michigan Governor Gretchen Whitmer issued a notice of revocation of the 1953 easement, calling for Line 5 to be shut down by May 2021, and simultaneously filed a complaint in state court to enforce the notice.   Her complaint closely paralleled the Attorney General's.   Indeed, according to Enbridge, it "repeat[ed] the same basic facts and claims alleged in the Attorney General's complaint," and these two lawsuits involved the "same controversy" between the "same parties or their privies."

Enbridge timely removed the Governor's case to the United States District Court for the Western District of Michigan on November 24, 2020.   *See* 28 U.S.C. § 1446(b)(1).   Enbridge's notice of removal asserted that the district court had federal-question jurisdiction under 28 U.S.C. § 1331 because the action "ar[ose] under" federal law.   Specifically, Enbridge argued that the district court's subject-matter jurisdiction derived from the "substantial federal question" doctrine, as recognized in *Grable & Sons Metal Products, Inc. v. Darue Engineering & Manufacturing*, 545 U.S. 308, 312–13 (2005).   In Enbridge's view, the Governor's state-law claims necessarily raised substantial questions of the federal government's foreign-affairs powers and preemption under the Pipeline Safety Act and the Submerged Lands Act.   Still within 30 days of the complaint's service, Enbridge then filed an amended notice of removal on December 10, 2020, asserting additional grounds for federal-question jurisdiction, including arguments that the claims arise under federal common law.

The Governor moved to remand the case to state court, arguing that the district court lacked jurisdiction over her exclusively state-law claims.   The Canadian government then filed an amicus brief in opposition to the motion to remand, arguing that "Michigan's Shutdown Order Presents Substantial and Important Treaty Issues" under the 1977 Transit Pipelines Treaty between the United States and Canada.   That treaty covers gas and oil pipelines crossing the border between Canada and the United States and prevents any public authority from "interfering with" the cross-border transmission of gas and oil.   Agreement Between the Government of the United States of America and the Government of Canada Concerning Transit Pipelines, art. I(a), art. II(1), Jan. 28, 1977, 28 U.S.T. 7449.   In its amicus brief, the Canadian government argued

that "unilateral action by a single state" to shut down Line 5 "would impair important U.S. and Canadian foreign policy interests by raising doubts about the capacity of the Government of the United States to make and uphold commitments without being undermined by an individual state."   On October 4, 2021, the Canadian government filed a supplemental amicus letter notifying Enbridge and the district court that Canada had formally invoked the treaty's dispute-resolution provision, beginning negotiations between the governments of Canada and the United States over Line 5.  *See id.*, art. IX.

The district court denied the Governor's motion to remand on November 16, 2021, a date critical to Enbridge's argument for timely removal of this case.  The court held that it had federal-question jurisdiction under *Grable* because resolution of the Governor's claims necessarily requires interpretation of federal law (namely, the Submerged Lands Act, the Pipeline Safety Act, and the 1977 Treaty) and the extent to which those laws "burden[]" Michigan's ownership of Great Lakes bottomlands.  *Michigan v. Enbridge Energy, Ltd. P'ship*, 571 F. Supp. 3d 851, 859, 862 (W.D. Mich. 2021).  Soon thereafter, the Governor voluntarily dismissed her case.

C.

*Removal of the Attorney General's case.*  Citing both the district court's order denying the motion to remand in the Governor's case and § 1446(b)(3)'s provision that permits removal within 30 days after the defendant's receipt of an "order . . . from which it may first be ascertained that the case is one which is or has become removable," Enbridge removed this case to federal court on December 15, 2021.  Although 887 days had passed since receipt of the Attorney General's complaint, Enbridge argued removal was nonetheless timely because it could not have ascertained that there were grounds for removal until the district court denied the motion to remand in the Governor's case.

On January 14, 2022, the Attorney General moved to remand this case to state court on two grounds:  untimely removal and lack of subject-matter jurisdiction.  The district court denied the motion on both grounds.  It excused Enbridge's untimely removal based on equitable principles.  And it estopped the Attorney General from challenging subject-matter jurisdiction in

this case, relying on its finding of subject-matter jurisdiction in the Governor's case.  It then certified its order for interlocutory appeal, and we granted the Attorney General permission to appeal.

## II.

We review a denial of a motion to remand de novo.  *Davis v. McCourt*, 226 F.3d 506, 509 (6th Cir. 2000).  The Attorney General seeks remand on the same two independent grounds it raised below:  untimely removal and lack of subject-matter jurisdiction.

In terms of sequencing, we need not address subject-matter jurisdiction before we address the timeliness of removal.  Although federal courts must resolve questions of subject-matter jurisdiction before deciding a case on the merits, we have "leeway to choose among threshold grounds for denying audience to a case on the merits."  *Sinochem Int'l Co. v. Malaysia Int'l Shipping Corp.*, 549 U.S. 422, 431 (2007) (internal quotation marks omitted); *see also* Scott Dodson, *In Search of Removal Jurisdiction*, 102 Nw. U. L. Rev. 55, 69 (2008) (noting that, in terms of "decisional sequencing," *Sinochem* suggests that jurisdictional issues do not have "rigid priority" over procedural issues).  Consistent with this discretion and following other courts that have remanded cases because of untimely removal without addressing questions of subject-matter jurisdiction, *see, e.g.*, *Tr. Servs. of Carolina, LLC v. Rivera*, 2012 WL 1664224, at *1–2 (W.D.N.C. May 2, 2012); *In re Foreclosure of a Deed of Tr.*, 2008 WL 5234301, at *2 (E.D.N.C. Dec. 15, 2008); *Laughlin Assocs., Inc. v. Durand*, 1997 WL 998381, at *1 n.1 (D. Nev. Oct. 17, 1997), *aff'd*, 156 F.3d 1236 (9th Cir. 1998) (unpublished table decision); *Steadman v. Sinclair*, 1996 WL 257664, at *2 n.2 (S.D.N.Y. May 16, 1996),[2] we do not decide whether the district court had subject-matter jurisdiction over this case because Enbridge's removal was untimely.

---

[2]It gives us no pause that there appear to be few, if any, appellate cases deciding a question of removal timeliness before deciding a question of subject-matter jurisdiction, considering 28 U.S.C. § 1447(d)'s prohibition of appellate review of remand orders for removal cases.  *See Wisconsin v. Amgen, Inc.*, 516 F.3d 530, 533 (7th Cir. 2008).

No. 23-1671                    *Nessel v. Enbridge Energy, LP, et al.*                    Page 7

A.

"The party seeking removal bears the burden of establishing its right thereto." *Her Majesty The Queen In Right of the Province of Ontario v. City of Detroit*, 874 F.2d 332, 339 (6th Cir. 1989). To remove a civil case from state to federal court, a defendant must meet the requirements for removal detailed in § 1446. *See Home Depot U.S.A., Inc. v. Jackson*, 139 S. Ct. 1743, 1746 (2019). That statute requires the defendant to file a notice of removal, 28 U.S.C. § 1446(a), and provides time limits to do so, *id.* § 1446(b). Section 1446(b)(1) states that the notice of removal "shall be filed within 30 days" of the defendant's receipt of the complaint or summons. *Id.* § 1446(b)(1). However, § 1446(b)(3) allows relief from that 30-day deadline under the following specific circumstances:

> [I]f the case stated by the initial pleading is not removable, a notice of removal may be filed within 30 days after receipt by the defendant, through service or otherwise, of a copy of an amended pleading, motion, order or other paper from which it may first be ascertained that the case is one which is or has become removable.

*Id.* § 1446(b)(3).

Enbridge unquestionably did not comply with § 1446(b)(1)'s initial 30-day removal deadline from the date of service of the complaint. The Attorney General served Enbridge with the complaint on July 12, 2019, so, under § 1446(b)(1), Enbridge needed to file its notice of removal by August 12, 2019. *See* Fed. R. Civ. P. 6(a)(1)(C). Enbridge missed that deadline by over two years.

Thus, at issue is whether Enbridge can avail itself of § 1446(b)(3)'s later 30-day window. By the statute's plain terms, that extension applies only if three elements are met. *See A.S. ex rel. Miller v. SmithKline Beecham Corp.*, 769 F.3d 204, 209–10 (3d Cir. 2014). First, Enbridge must show that "the case stated by the initial pleading [was] not removable." 28 U.S.C. § 1446(b)(3). Second, it must show that some variable changed that transformed this initially non-removable case into one that was removable. And third, Enbridge must show that, no more than 30 days before December 15, 2021—when it filed its notice of removal—it received "a copy of an amended pleading, motion, order or other paper from which it [could] first be ascertained that the case is one which is or has become removable." *Id.*

No. 23-1671                    *Nessel v. Enbridge Energy, LP, et al.*                    Page 8

For a case to be removable, a federal district court must have "original jurisdiction" over the case.**3**  *Id.* § 1441(a); *see Caterpillar Inc. v. Williams*, 482 U.S. 386, 392 (1987); 14C Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 3721.1 (Rev. 4th ed. 2023). Enbridge bases its removal arguments on 28 U.S.C. § 1331's grant of "original jurisdiction [over] all civil actions arising under the Constitution, laws, or treaties of the United States"—i.e., federal-question jurisdiction.  On that ground, if any one of the plaintiff's claims depends on the application of federal law, the entire case may be removed.  28 U.S.C. § 1441(c); *see also* 14C Wright & Miller § 3722.  Further, removability requires that a defendant be able to articulate that ground in its notice of removal, which must be "signed pursuant to Rule 11 of the Federal Rules of Civil Procedure."  28 U.S.C. § 1446(a).  Under that standard, a signature certifies that, to the best of counsel's "knowledge, information, and belief," the contentions in the notice of removal are supported by existing law or a "nonfrivolous" argument for extending existing law.  Fed. R. Civ. P. 11(b).  In other words, a defendant must have a "good-faith" basis for legal arguments in the notice of removal.  *King v. Whitmer*, 71 F.4th 511, 528 (6th Cir. 2023); *see also Dahl v. R.J. Reynolds Tobacco Co.*, 478 F.3d 965, 970 (8th Cir. 2007) (applying Rule 11 in removal context).  Thus, a case becomes removable on federal-question grounds when the defendant has a good-faith basis to argue that at least one of the plaintiff's claims depends on the application of federal law.

B.

Enbridge asserts that federal-question jurisdiction now exists in either of two ways.  First, under the *Grable* doctrine, the Attorney General's state-law claims necessarily turn on a substantial and disputed issue of federal law—the extent to which the Submerged Lands Act, the Pipeline Safety Act, and the 1977 Treaty "burden" Michigan's authority over the Straits' bottomlands.  *See Grable*, 545 U.S. at 312–13.  Second, because the Attorney General's state-law claims could cause major implications for foreign affairs, an area of "uniquely federal interest[]," those claims arise under federal common law via the foreign-affairs doctrine.

---

**3**The jurisdiction and removal statutes—and thus this opinion—alternatively use the terms "original jurisdiction" and "subject matter jurisdiction."  *Compare* 28 U.S.C. § 1441(a) (referring to "original jurisdiction"), *with id.* § 1447(c) (referring to "subject matter jurisdiction").  For our purposes, these terms are synonymous, and § 1331 is a fount of both.

*See Cassirer v. Thyssen-Bornemisza Collection Found.*, 596 U.S. 107, 116 (2022) (citation omitted); *see also Republic of Phil. v. Marcos*, 806 F.2d 344, 352–53 (2d Cir. 1986); *Torres v. S. Peru Copper Corp.*, 113 F.3d 540, 543 (5th Cir. 1997).

We express no opinion on the merits of Enbridge's jurisdictional theories.  Rather, to determine whether Enbridge can avail itself of § 1446(b)(3)'s later removal window, we assume that either theory could give rise to federal jurisdiction and decide only (1) whether that theory made this case removable when the complaint was filed; (2) if not, whether some later change made the case removable; and (3) when Enbridge could have first "ascertained" that the case was removable.  As set forth next, we agree with the Attorney General that Enbridge did not comply with § 1446(b)(3)'s requirements.

1.

Viewed through this timing lens, both of Enbridge's jurisdictional theories fail on § 1446(b)(3)'s first or third elements.  First, Enbridge cannot establish that "the case stated by the initial pleading [was] not removable."  28 U.S.C. § 1446(b)(3).  Enbridge's own actions support this conclusion—it timely removed the Governor's case on *Grable* grounds in November 2020, and soon after amended that notice of removal in December 2020 with its argument about federal common law.  As Enbridge admits, the Attorney General's and Governor's complaints both featured "the same basic facts and claims" and involved the "same controversy" between the "same parties or their privies."  Thus, assuming either of Enbridge's jurisdictional theories are meritorious, the Attorney General's case was removable on those grounds from its outset, just like the Governor's case was.

Enbridge's appellate brief offers no explanation regarding how the Governor's case could be removable from its outset but this case was not.  At oral argument, Enbridge argued (for the first time) that the Governor's easement-revocation notice, calling for the shutdown of Line 5 within six months, sparked a "significant foreign-affairs controversy" that, in turn, made the Governor's and Attorney General's cases such that they arose under federal law under either *Grable* or federal common law.  *See Resurrection Sch. v. Hertel*, 35 F.4th 524, 530 (6th Cir. 2022) (en banc) (suggesting forfeiture).

But while this unpreserved argument might explain how this case initially was not removable and then later became so, it cannot satisfy § 1446(b)(3)'s third element because it clashes with Enbridge's argument about the first "paper" it received that allowed it to "ascertain[]" that this case had become removable.  Enbridge asserts that first "paper" was the district court's November 2021 order denying remand in the Governor's case.  Even if papers filed in one case could trigger § 1446(b)(3)'s later removal window in another, *but see Amgen*, 516 F.3d at 533–34 (collecting cases suggesting that § 1446(b)(3)'s reference to "an amended pleading, motion, order or other paper" refers only to papers in the suit to be removed), Enbridge's removal in the Governor's case shows that it was the Governor's complaint, not the district court's order denying remand, that first gave Enbridge good-faith grounds to remove. Regardless of whether the Governor's notice sparked a "foreign-affairs controversy," Enbridge plainly had good-faith grounds to remove when it received the Governor's complaint, and then promptly removed, in November 2020.  Indeed, by December 2020, Enbridge had already articulated both of its jurisdictional theories in its amended notice of removal in the Governor's case.  Yet Enbridge did not remove *this* case until a full year later—far exceeding § 1446(b)(3)'s window of 30 days.  Thus, under either of Enbridge's jurisdictional theories, its arguments for timely removal fail under § 1446(b)(3)'s first or third elements.

## 2.

Enbridge's arguments to the contrary are not persuasive.  Enbridge tries to justify the delay between its late 2020 removal of the Governor's case and December 2021 removal of this case by focusing on the word "ascertain" in § 1446(b)(3) and our interpretation of that statute in *Berera v. Mesa Medical Group, PLLC*, 779 F.3d 352, 364 (6th Cir. 2015).  There, we stated that "[t]he 30-day period in § 1446(b)(1) starts to run only if the initial pleading contains solid and unambiguous information that the case is removable."  *Id.* (internal quotation marks omitted). We added that, "[i]f the initial pleading lacks solid and unambiguous information that the case is removable," then the defendant must remove "'within 30 days after receipt of a copy of an amended pleading, motion, order or other paper' that contains solid and unambiguous information that the case is removable."  *Id.* (ellipses omitted) (quoting § 1446(b)(3)).  Applying this language, Enbridge argues that the question is not just whether the case was "removable"

when the complaint was filed but whether it was "unambiguously removable."  It further contends that the first time it had "solid and unambiguous information" that this action was removable—i.e., the first time it "ascertained" removability—was when it received the district court's November 2021 order denying remand in the Governor's case.

But, for two reasons, *Berera* cannot save Enbridge's belated removal.  First, *Berera* is distinguishable on its facts.  It was a case of artful pleading, in which the plaintiff tried to circumvent federal jurisdiction "by artfully casting [her] essentially federal law claims as state-law claims."  *Id.* at 358 (citation omitted).  There, in response to the plaintiff's threadbare complaint, which purported to assert only state-law claims, the defendant had to file a motion for a more definitive statement to learn about the claims' true nature.  *Id.* at 355.  The plaintiff's intention to assert federal claims became clear only after her counsel's admissions at a hearing on that motion.  *Id.* at 356.  Such obfuscation by the plaintiff deprived the defendant of the opportunity to learn of grounds for removal.

Here, by contrast, Enbridge does not argue that the Attorney General "carefully crafted her complaint to circumvent federal jurisdiction."  *Id.* at 358.  Rather, Enbridge argues only that the Attorney General's complaint is the rare case in which federal jurisdiction exists but was uncertain because the complaint alleges only state-law claims, the parties are not diverse, and the *Grable* and foreign-affairs doctrines are "anything but clear."  *See Grable*, 545 U.S. at 321 (Thomas, J., concurring).  At bottom, Enbridge contends that its jurisdictional theories were complex, necessitating additional time to remove.  While we appreciate the difficulty of navigating complicated doctrines and applying them to unique facts under time constraints, that is what § 1446(b) requires.  And Enbridge showed that it could make these arguments under a tight deadline—it timely filed its notice of removal (and amended notice of removal) articulating these theories within 30 days of its receipt of the complaint in the Governor's case.

Second, § 1446(b)(3)'s use of "ascertain[]" and *Berera*'s reference to "solid and unambiguous information" does not transform the removability inquiry into whether and when a case was "unambiguously removable."  Granted, as Enbridge points out, to "ascertain" means "to learn with certainty."  *Ascertain*, Random House Webster's Unabridged Dictionary (2d ed. 2001).  But to ascertain that a case is removable does not mean to learn with certainty that there

is federal jurisdiction.  Rather, it means to learn with certainty that there are good-faith grounds on which to argue for federal jurisdiction.  In other words, as *Berera* states:  "Section 1446(b)'s requirement of solid and unambiguous information is akin to actual notice."  779 F.3d at 364.  If at first a case is not removable, § 1446(b)(3) ensures that the defendant "has an opportunity to remove upon being given notice" of grounds on which it can exercise that right.  *Id.* (citation and ellipses omitted).  Enbridge had notice of good-faith grounds for removability because it removed the "same controversy" on the same grounds a full year before it removed this case.

Given this conclusion, Enbridge's additional argument that Canada's later invocation of the 1977 Treaty first made this case removable is without merit.  And even if that argument could somehow show that this case first became removable based on Canada's declarations, it too fails under § 1446(b)(3)'s third element.  On October 4, 2021, the Canadian government filed a supplemental amicus letter in the Governor's case notifying Enbridge and the court that Canada had formally invoked the treaty's dispute-resolution provision.  Enbridge confirmed its understanding of that letter's importance in a filing of its own on October 12, 2021, arguing that "Michigan's claims have directly and significantly affected U.S. foreign relations with Canada, making removal appropriate."  Thus, Canada's October 4 letter in the Governor's case was a paper from which Enbridge could ascertain removability of this case—the "same controversy" as the Governor's case.  But Enbridge did not remove this case within 30 days of its receipt of that letter; it instead waited until December 15, 2021—72 days later.

C.

In sum, under either of Enbridge's jurisdictional theories, Enbridge had good-faith grounds to argue for federal jurisdiction more than 30 days before it removed this case. Enbridge missed § 1446(b)(1)'s initial window for removal, and to the extent § 1446(b)(3)'s later removal window was ever open, Enbridge missed that one too.  Enbridge's removal was therefore untimely under § 1446(b).

III.

Next, we must decide whether the district court correctly ruled that § 1446(b) permits an equitable exception to the statutory deadlines.  Although Enbridge argues that we should review

the district court's determination that equity favored Enbridge for abuse of discretion, whether a statute permits an equitable exception in the first place is a legal question that we review de novo.  *Cf. In re Maughan*, 340 F.3d 337, 341 (6th Cir. 2003).

Statutory time limits exist on a spectrum of how strictly courts enforce them.  They range from "jurisdictional" conditions on the stricter end to mere "time-related directives" on the laxer.  *See Dolan v. United States*, 560 U.S. 605, 610–11 (2010).  In the middle is the broad category of "claims-processing rules," which "do not limit a court's jurisdiction, but rather regulate the timing of [requests] brought before the court."  *Id.*

Federal courts have "no authority to create equitable exceptions to jurisdictional requirements."  *Bowles v. Russell*, 551 U.S. 205, 214 (2007).  Indeed, immunity from equitable exceptions is one of several hallmark characteristics of a jurisdictional rule.  If a statutory time limitation "is taken to be jurisdictional, waiver becomes impossible, meritorious excuse irrelevant (unless the statute so provides), and *sua sponte* consideration in the courts of appeals mandatory."  *Id.* at 216–17 (2007) (Souter, J., dissenting) (citing *Arbaugh v. Y&H Corp.*, 546 U.S. 500, 514 (2006)); *see also Day v. McDonough*, 547 U.S. 198, 205 (2006).

We know that § 1446(b)'s time limits are not jurisdictional because they do not possess all these characteristics—specifically, removal-timing issues may be raised only by the plaintiff and only within a strict window of time.  Section 1447(c) provides that a plaintiff's motion to remand "on the basis of any defect other than lack of subject matter jurisdiction," such as untimely removal, "must be made within 30 days after the filing of the notice of removal."  Thus, unlike "jurisdictional" statutory deadlines, § 1446(b)'s removal deadlines are not ones that "authorize *sua sponte* remands for purely procedural defects," and they are subject to forfeiture if not raised in a timely motion to remand.  *Page v. City of Southfield*, 45 F.3d 128, 133 (6th Cir. 1995); *cf. Smith v. State of Ohio Dep't of Rehab. & Corr.*, 463 F.3d 426, 429 n.2 (6th Cir. 2006).

But simply confirming that § 1446(b)'s deadlines are non-jurisdictional does not resolve the question before us.  After all, "[t]he mere fact that a time limit lacks jurisdictional force . . . does not render it malleable in every respect."  *Nutraceutical Corp. v. Lambert*, 586 U.S. 188, 192 (2019).  Certain deadlines, though non-jurisdictional, are "not subject to

equitable tolling." *Id.*  When properly raised by an opposing party, these "mandatory" claims-processing rules "are 'unalterable,'" *id.* (quoting *Manrique* v. *United States*, 581 U.S. 116, 121 (2017)), and "assure relief to a party properly raising them," *Eberhart v. United States*, 546 U.S. 12, 19 (2005) (per curiam).  In other words, "[r]ules in this mandatory camp are not susceptible of the equitable approach" the district court applied here.  *Nutraceutical*, 586 U.S. at 192; *see also* Scott Dodson, *Mandatory Rules*, 61 Stan. L. Rev. 1, 5–9 (2008).  Because the Attorney General properly invoked § 1446(b)'s removal time limits in a timely motion to remand, *see* 28 U.S.C. § 1447(c), we must determine whether those non-jurisdictional time limits are mandatory and thus immune from equitable exceptions.

Although we presume that we can grant equitable exceptions to non-jurisdictional statutes, *Holland v. Florida*, 560 U.S. 631, 645–46 (2010), that presumption is rebuttable, *see Harrow v. Dep't of Def.*, 144 S. Ct. 1178, 1186 (2024) (remanding for consideration of whether a non-jurisdictional appeal deadline is subject to equitable tolling).  Whether "equitable tolling is available" under a particular statute "is fundamentally a question of statutory intent." *Lozano v. Montoya Alvarez*, 572 U.S. 1, 10 (2014).  Here, applying our usual tools of statutory construction, we have "good reason to believe that Congress did *not* want" equitable exceptions to apply to § 1446(b)'s time limitations. *United States v. Brockamp*, 519 U.S. 347, 350 (1997).

We begin with the text, focusing on whether the statute as a whole allows flexibility for extra-textual exceptions. *See Nutraceutical*, 586 U.S. at 192–93; *see also Harrow*, 144 S. Ct. at 1183–84.  Section 1446(b)(1) sets the default rule:  a notice of removal "shall be filed within 30 days" after the defendant's receipt of the initial pleading or summons.  If the defendant receives those documents at different times, the applicable deadline is "whichever period is shorter," suggesting an intent for strict enforcement. *Id.*

The statute then includes explicit exceptions—and carveouts from those exceptions—to that default rule.  It first includes an exception in cases involving multiple defendants served at different times (which is not applicable here). *Id.* § 1446(b)(2)(C).  It then provides for § 1446(b)(3)'s later 30-day removal window, which, as discussed above, applies only "if the case stated by the initial pleading is not removable" and a later-received paper gives the defendant notice that the case has become removable. *Id.* § 1446(b)(3).  But Congress further limited that

No. 23-1671                *Nessel v. Enbridge Energy, LP, et al.*                Page 15

exception—it applies "[e]xcept as provided in subsection (c)." *Id.* Subsection (c), in turn, provides that "[a] case may not be removed under subsection (b)(3) on the basis of [diversity jurisdiction] more than 1 year after commencement of the action, unless the district court finds that the plaintiff has acted in bad faith in order to prevent a defendant from removing the action." *Id.* § 1446(c).**4**

This statutory text expresses "a clear intent to compel rigorous enforcement" of its deadlines, limited only by its explicit exceptions. *Nutraceutical*, 586 U.S. at 193. Applying equitable tolling to either 30-day window in (b)(1) or (b)(3) would require adding a judicially made exception to Congress's detailed, express scheme of exceptions and carveouts, an action the Supreme Court has cautioned against. *See id.* at 194; *United States v. Beggerly*, 524 U.S. 38, 48–49 (1998); *Brockamp*, 519 U.S. at 352.

Next, we look to context. One relevant consideration for whether a deadline has "jurisdictional attributes"—like immunity to equitable exceptions—is where Congress placed it in the overall statutory scheme. *See Henderson ex rel. Henderson v. Shinseki*, 562 U.S. 428, 439 (2011); *see also West Virginia v. Env't Prot. Agency*, 597 U.S. 697, 721 (2022). The removal statutes, including § 1446, are nested within U.S. Code Title 28, Part IV, titled "*Jurisdiction* and *Venue*." (Emphasis Added). Indeed, as discussed above, whether a case is removable is intertwined with questions of whether and when the defendant had grounds to argue for federal jurisdiction. Although § 1446(b) may not be jurisdictional, its placement near and interrelation with the jurisdictional statutes suggests stricter enforcement. *Cf. Henderson*, 562 U.S. at 439; *see also United States v. Wong*, 575 U.S. 402, 411–12 (2015).

Finally, we look to precedent. Overwhelming authority provides that removal statutes— such as § 1446(b)—are to be strictly construed against removal out of respect for state sovereignty. *Syngenta Crop Prot., Inc. v. Henson*, 537 U.S. 28, 32 (2002) ("[S]tatutory procedures for removal are to be strictly construed."); *Shamrock Oil & Gas Corp. v. Sheets*,

---

**4**Congress added this last exception—the bad-faith exception to the one-year limit on removal of diversity actions—in 2011 as part of the Federal Courts Jurisdiction and Venue Clarification Act. Pub. L. No. 112-63, 125 Stat. 758 (2011). That amendment was intended "to resolve the conflict" over whether the one-year limit was subject to equitable tolling. *See* H.R. Rep. No. 112–10, at 15 (2011), *reprinted in* 2011 U.S.C.C.A.N. 576, 580. The language "makes clear that the exception to the bar of removal after one year is limited in scope." *Id.*

313 U.S. 100, 108 (1941) (explaining that language and policy of removal statutes "call[] for the strict construction of such legislation"); *Holston v. Carolina Freight Carriers Corp.*, 936 F.2d 573, 1991 WL 112809, at *3 (6th Cir. 1991) (unpublished table decision) (interpreting § 1446(b) and stating that "the statutes conferring removal jurisdiction are to be construed strictly"); *Brierly v. Alusuisse Flexible Packaging, Inc.*, 184 F.3d 527, 534 (6th Cir. 1999) (interpreting § 1446(b) and observing that "statutes conferring removal jurisdiction are to be construed strictly because removal jurisdiction encroaches on a state court's jurisdiction"); *see also* 14C Wright & Miller § 3731 & n.62 (noting that "[t]he two 30-day time limitations in Section 1446 are mandatory" and collecting cases).  "[S]trict construction does not allow a court to disregard the purpose of Congress."  *United States v. Klingler*, 61 F.3d 1234, 1237 (6th Cir. 1995).  Thus, we do not "snatch[]" cases from state courts "unless some clear rule demands it."  *Nessel ex rel. Michigan v. AmeriGas Partners, L.P.*, 954 F.3d 831, 837 (6th Cir. 2020) (citation omitted).

For these reasons, several district courts in this Circuit have rejected equitable exceptions as incompatible with a strict construction of § 1446(b).  *See, e.g.*, *Gray v. Martin*, 2013 WL 6019335, at *6 (E.D. Ky. Nov. 13, 2013) (Thapar, J.) (noting that courts in this Circuit have consistently rejected invitations to engraft unwritten equitable exceptions into the removal statute); *Riley v. Ohio Cas. Ins.*, 855 F. Supp. 2d 662, 671 (W.D. Ky. 2012) (refusing to recognize a judicially crafted equitable exception to § 1446(b)'s one-year limitation for removal of actions based on diversity jurisdiction); *City of Albion v. Guar. Nat'l Ins.*, 35 F. Supp. 2d 542, 544 (W.D. Mich. 1998) ("Although not jurisdictional, the thirty-day period for removal is mandatory and must be strictly applied."); *McCraw v. Lyons*, 863 F. Supp. 430, 434 (W.D. Ky. 1994) ("[A] defendant's failure to comply with the statute's thirty-day limitation is an absolute bar to removal regardless of whether the removal would have been proper if timely filed.").  We agree—there is no equitable exception to § 1446(b)'s timing requirements.

The cases Enbridge cites in support of an equitable exception are not persuasive.  For instance, some are factually distinct, like two multi-defendant cases in which every defendant except one filed a timely notice of removal but one defendant filed one day late.  *Hernandez v. Six Flags Magic Mountain, Inc.*, 688 F. Supp. 560, 561 (C.D. Cal. 1988); *Farm & City Ins. v. Johnson*, 190 F. Supp. 2d 1232, 1237 (D. Kan. 2002).  Others disfavor an equitable exception

No. 23-1671                    *Nessel v. Enbridge Energy, LP, et al.*                    Page 17

because they resulted in remand to state court for untimely removal.  *Brown v. Demco, Inc.*, 792 F.2d 478, 482 (5th Cir. 1986); *Holder v. City of Atlanta*, 925 F. Supp. 783, 786 (N.D. Ga. 1996). Enbridge's best case is *Loftin v. Rush*, 767 F.2d 800, 801, 805–06 (11th Cir. 1985), which held that a state court's improper entry of default judgment against the United States Navy, in derogation of federal-government immunity, warranted excusing a late removal.  But this single, 39-year-old, distinguishable, and out-of-circuit case hardly constitutes a "clear rule" that "demands" an equitable exception here, *Nessel*, 954 F.3d at 837, especially considering the overwhelming weight of authority against it.

Accordingly, we hold that § 1446(b)'s time limitations are mandatory.  When invoked in a timely motion to remand, these limitations leave no room for equitable exceptions.  Enbridge's failure to comply with these mandatory rules requires remand.

IV.

For these reasons, we reverse the district court's denial of the motion to remand.  We remand for the district court to enter an order remanding this case to Michigan's 30th Circuit Court for the County of Ingham.

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

No. 23-1671

DANA NESSEL, Attorney General of the State of Michigan, on behalf of the people of the State of Michigan,

    Plaintiff - Appellant,

    v.

ENBRIDGE ENERGY, LP; ENBRIDGE ENERGY COMPANY, INC.; ENBRIDGE ENERGY PARTNERS, L.P.,

    Defendants - Appellees.

> **FILED**
> Jun 17, 2024
> KELLY L. STEPHENS, Clerk

Before:  GRIFFIN, THAPAR, and NALBANDIAN, Circuit Judges.

# JUDGMENT

On Appeal from the United States District Court
for the Western District of Michigan at Grand Rapids.

THIS CAUSE was heard on the record from the district court and was argued by counsel.

IN CONSIDERATION THEREOF, it is ORDERED that the district court's denial of the motion to remand is REVERSED, and the case is REMANDED for entry of an order remanding the case to Michigan's 30th Circuit Court for the County of Ingham.

**ENTERED BY ORDER OF THE COURT**

_____
Kelly L. Stephens, Clerk